UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREII ZAMANA, *et al.*, | : | Case No. 1:21-cv-125 |
| Plaintiffs, | : | |
| vs. | : | Judge Timothy S. Black |
| TRACY RENAUD, Senior Official Performing Duties of Director, U.S. Citizenship and Immigration Services, *et al.*, | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. 14)**

This civil case is before the Court on a motion to dismiss for lack of subject matter jurisdiction (Doc. 14) by Defendant United States Citizenship and Immigration Services ("USCIS" or "the Agency"), and the parties' responsive memoranda (Docs. 16, 17).

## I.   BACKGROUND

### A.   Statutory and Regulatory Background

This case arises from our nation's convoluted immigration system.  The law permits qualified foreign citizens to become permanent U.S. residents by securing employment with an American company.  8 U.S.C. § 1153(b)(3)(A)(ii).  To be eligible, hopeful applicants and their prospective employers endure a three-step process.

*First*, the employer submits an "Application for Permanent Employment Certification," using ETA Form 9089, to the Department of Labor ("DOL").  *See* 8 U.S.C. § 1182(a)(5)(A)(i); 20 C.F.R. § 656.3.  The Department of Labor is charged with

certifying that (1) "there are not sufficient workers who are able, willing, qualified … and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor" and (2) "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i). Detailed regulations govern DOL's certification decisions. *See generally* 20 C.F.R. Part 656. For instance, the employer must attest that it will offer wages equal or exceeding prevailing wages for similar work, *id.* at 656.10(c)(1), that the employer will be able to place the prospective foreign employee on the payroll immediately, *id.* at 656.10(c)(4), and that the employer has engaged in recruitment activities including by placing ads on "Job search Web site[s]," *id.* at 656.17(e). In addition, DOL has authority to audit information submitted in an ETA Form 9089 for veracity, *id.* at § 656.20(a), and to subject the employer to "supervised recruitment" if DOL determines that "documentation was inadequate, or determines a material misrepresentation was made," *id.* at § 656.20(f).

Once the employer has made all the required attestations and submitted the required evidence, a "Certifying Officer" at DOL is charged with deciding to either grant or deny the labor certification. *Id.* at § 656.24(b). The Certifying Officer determines whether "the employer has met the requirements" of DOL's regulations, whether any U.S. workers are qualified and available for the job "at the place of the job opportunity," and whether the employing the foreign citizen will "have an adverse effect upon wages for similar employees "in the area of intended employment." *Id.* at 656.24. If the Certifying Officer finds that the employer has satisfied the requirements of the statute and DOL's

implementing regulations, "the Certifying Officer must send the certified application and complete Final Determination form to the employer … indicating the employer may file all the documents with the appropriate [Department of Homeland Security] office." *Id.* at § 656.24(d). Fundamental to the Certifying Officer's decision is the premise that the applicant was the actual intended employer for the prospective foreign citizen employee, and that the applicant provided the true and correct place of employment. Without those two facts—that the applicant was the true employer, and the job location was correct—certifying the application would be impossible.

*Second,* after securing the certified application from DOL (the "labor certification"), the employer delivers it to a different executive branch department. The United States Customs and Immigration Services ("USCIS") is an agency with the the Department of Homeland Security ("DHS"). USCIS is charged with issuing visas that confer legal permanent resident status. 8 C.F.R. §§ 103.2, 204.5. The employer sends the labor certification and a Form I-140 "Immigrant Petition for Alien Worker" to USCIS. *See* 8 U.S.C. 1154(a)(1)(E). The Form I-140 requests only basic information about the employer. Instructions for the Form I-140 require only that "*A* U.S. employer may file this petition for … [a] member of the professions with a baccalaureate degree," Form I-140 Instructions at 1 (emphasis supplied), and that the employer must include the labor certification and evidence of the potential employee's credentials, *id.* at 5-6, 7. Likewise, the regulations governing "petitions for employment-based immigrants" permit "[a]ny United States employer desiring and intending to employ an alien" to file a Form I-140 petition. The regulations require an employer to submit an original copy of the labor

3

certification, and evidence of its ability to pay the immigrant's wages, but do not impose any requirements on the location of the employer's job site or the employer's corporate structure. *See* 8 C.F.R. §§ 204.5(g), (l).  Once a petitioner's Form I-140 is approved, she may proceed to the third and final step.

*Third,* an employment-based immigrant who has successfully petitioned may enter the United States and apply for an "adjustment of status" to become a "person admitted for permanent residence."  8 U.S.C. § 1255(a).  For many, that finish line represents a hard-earned promise of opportunity and success.

But the moment can be fleeting.

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition.

8 U.S.C. § 1155.  The Sixth Circuit has held that the decision to revoke the approval of a petition is "discretionary" and therefore falls under the so-called "jurisdiction-stripping" provision at 8 U.S.C. § 1252(a)(2)(B)(ii).  *Mehanna v. U.S. Citizenship & Immigration Services*, 677 F.3d 312, 315 (6th Cir. 2012).  This clause bars court review of USCIS decisions to revoke "previous approval of a visa petition."  *Id.* at 317.  The Sixth Circuit has also held, however, that federal courts retain jurisdiction to review "nondiscretionary decisions … even where they underlie determinations that are ultimately discretionary." *Jomaa v. United States*, 940 F.3d 291, 296 (6th Cir. 2019).

4

### B. Factual Background

Plaintiff Andreii Zamana went through the entire process described above. Zamana (or "Plaintiff") is a citizen of Russia. Plaintiff NetCracker Technology Corporation ("NTC"), an IT company based in Waltham, Massachusetts, sought to hire Zamana as a Technical Support Manager. NTC submitted the ETA Form 9089 to DOL with all the accompanying documentation and evidence it required. NTC used its Ohio business address, 221 East 4th Street, Cincinnati, Ohio (the "Ohio Address"), because that was the "place where the alien [wa]s to perform such skilled or unskilled labor." 8 U.S.C. § 1182. DOL approved the application and returned a labor certification. On November 12, 2019, NTC and Zamana (collectively "Plaintiffs") submitted the labor certification and a completed Form I-140 to USCIS. On November 20, 2019, USCIS granted Plaintiffs' petition which permitted Zamana to move to the United States and start working.

One month later, on December 23, 2019, USCIS issued Plaintiffs a Notice of Intent to Revoke approval of his petition ("NOIR"). The NOIR claimed that the petition was approved in error because NTC was not authorized to do business in Ohio, and that the address provided on both the ETA Form 9089 (sent to DOL), and the Form I-140 (sent to DHS) was not Zamana's true place of employment. Plaintiffs responded with voluminous evidence but, on May 26, 2020, in a letter signed by a Director L. Miller (Officer #0221), USCIS officially revoked approval of Zamana's petition and, thereby, terminated his legal permanent resident status.

The Agency's letter made, essentially, three findings. *First*, USCIS claimed that Zamana's true employer was NetCracker Technology Solutions Inc. ("NTS"). *Id.* at 20. The Agency explained that it had done a Google search and discovered that a company called NetCracker Technology Solutions was registered at the Ohio address Plaintiffs had provided in its submissions to DOL and USCIS. USCIS took this to mean that Zamana was working for NT*S* rather than NT*C*. Plaintiffs attempted to explain that NTS was merely a non-functioning subsidiary of NTC that happened to be registered at the same address, but USCIS declined to credit that explanation because it "ha[d] doubt that both the parent company and its subsidiary operate out of the same address." *Id.* USCIS expressly disregarded the Department of Labor's labor certificate, asserting, without citation to authority, that it was "not bound by [DOL] decisions and will only consider them as supplemental evidence." *Id.* at 21. And USCIS asserted that "[r]egulations require that a Form I-140 is filed by the actual intended employer," again without citation to any regulation.

*Second*, USCIS concluded NTC was not doing business in Ohio. USCIS asserted NTC's Ohio business license, lease agreement for office space in Ohio, invoices for purchases made in Ohio, and rent and utility payments were not enough to show that NTC was doing business in Ohio. *Id.* at 22.

*Third*, USCIS rejected that NTC had ever provided Zamana a "bona fide job offer." *Id.* at 23. The Agency disregarded evidence that NTC (not NTS) had posted ads for the job opening on Monster.com, paystubs to Zamana bearing NTC's name, and other evidence that Plaintiffs had submitted to DOL for certification. *Id.* Indeed, the Agency

expressly rejected DOL's labor certification saying "DOL may not have been aware of material facts at the time it certified the labor certification." *Id.* at 24. The Agency even pointed to Zamana's Kentucky home address as evidence that there was no jobsite in Cincinnati. *Id.* Accordingly, USCIS revoked Zamana's petition for permanent legal resident status.

On February 23, 2021, Plaintiff brought this suit under the Administrative Procedure Act alleging that the agency's decision to revoke Zamana's petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C §§ 701-706.53. USCIS has now filed a motion to dismiss arguing that, because the Agency's decision to revoke its approval of Zamana's petition was discretionary under 8 U.S.C. § 1155, this Court has no jurisdiction to review it. 8 U.S.C. § 1252(a)(2)(B)(ii).

## II.     STANDARD OF REVIEW

Under a 12(b)(1) motion, the plaintiff has the burden of proving jurisdiction. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss for lack of subject-matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a factual attack, the Court must weigh the "evidence [before it] to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack goes to whether the

7

plaintiff has properly alleged a basis for jurisdiction, and the trial court takes the allegations of the complaint as true. *Id*. Defendant here does not contest the facts in the complaint and therefore brings a facial attack. *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 672 (S.D. Ohio 2017). In deciding the merits of a facial attack under 12(b)(1), "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Thus, a facial attack on the pleading under Rule 12(b)(1) mirrors the standard of review on a motion brought under Rule 12(b)(6). *Ball by Burba*, 244 F. Supp. 3d at 672.

### III. ANALYSIS

Under the Immigration and Nationality Act ("INA"), Congress barred judicial review of any:

> decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security … .

8 U.S.C. § 1252(a)(2)(B)(ii). Plaintiffs do not dispute that a decision to revoke an immigrant petition is discretionary. As the Court explained above, 8 U.S.C. § 1155, governs revocation of immigrant petitions. That section states:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition.

8

8 U.S.C. § 1155. In *Mehanna v. U.S. Citizenship & Immigr. Servs.*, the Sixth Circuit joined a majority of federal circuit courts in holding that "the Secretary's decision to revoke a visa petition under section 1155 is an act of discretion that Congress has removed from our review." 677 F.3d 312, 315 (6th Cir. 2012). Plaintiffs have tried to distinguish *Mehanna* by arguing that their case involves an employment-based petition using Form I-140, (8 U.S.C. § 1154(a)(1)(E)), whereas the petition in *Mehanna* involved revocation of a family-based petition on Form I-130. That distinction is unavailing. The language of *Mehanna* broadly applies to all petitions that the secretary can approve under 8 U.S.C. § 1154. *Id.* at 317 ("Section 1155, which allows the Secretary to revoke his previous approval of a visa petition and thus conclusively determines whether an alien can stay in the country or not, fits squarely within the class of "substantive decisions" … warranting insulation from judicial review"). Indeed, USCIS is correct that many of the cases *Mehanna* cited arose in the context of revoked employment-based I-140 petitions. *Id.* at 314-15 (citing *Abdelwahab v. Frazier,* 578 F.3d 817, 821 (8th Cir. 2009); *Sands v. U.S. Dep't of Homeland Sec.,* 308 Fed. App'x. 418, 419–20 (11th Cir. 2009); *Jilin Pharm. USA, Inc. v. Chertoff,* 447 F.3d 196, 201–05 (3d Cir. 2006); *El–Khader v. Monica,* 366 F.3d 562, 566 (7th Cir. 2004)). Thus, the Court concludes that revocations of employment-based I-140 petitions are discretionary and ordinarily removed from judicial review. Were that the end of the analysis, this would be a much shorter Order.

Several years after *Mehanna*, the Sixth Circuit decided *Jomaa v. United States*, 940 F.3d 291 (6th Cir. 2019). As in *Mehanna*, USCIS revoked Plaintiff Jomaa's family-based visa petition claiming it had mistakenly granted the petition in the first place. *Id.* at

9

294. Jomaa filed a complaint in federal district court. *Id.* The district court determined that it had jurisdiction but that the revocation was not arbitrary or capricious and dismissed the case. *Id.* On appeal, the Sixth Circuit reviewed the district court's subject matter jurisdiction de novo. *Id.* As in *Mehanna*, the Sixth Circuit concluded that USCIS was within its discretion under § 1155 to revoke the petition and that act was not subject to judicial review. *Id.* at 295. "But § 1155 [was] not the only relevant provision." *Id.* The Sixth Circuit took a closer look at the letter explaining the Agency's decision to revoke the petition and found that it was based on the Agency's interpretation of 8 U.S.C. § 1154(c), which states "no petition shall be approved" if the immigrant is suspected a one or another forms of marriage fraud. *Id.* The circuit court observed that "[u]nlike § 1155, this section d[id] not contain the same discretion-indicating language … highlighted in *Mehanna*. Quite the opposite." *Id.* This section "contain[ed] the word 'shall'" which indicates "discretionless obligations." *Id.* (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 400 (2008)). Based on this observation, the Sixth Circuit concluded that the Agency's "decision to revoke the visa petition after discovering its mistake" was ***not*** a discretionary act. *Id.* at 296. Failing to exercise jurisdiction would, in the court's view, reward the Agency's mistake by creating a "perverse incentive" for UCSIS. Because Congress expressly grants federal court jurisdiction to review *denials* of visa petitions, the Agency could "evade judicial review by granting a visa petition it should have denied outright and then immediately revoking it." *Id.* Nondiscretionary decisions, the court held, "are within our purview even where they underlie

determinations that are ultimately discretionary." *Id.* (citing *Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 379 (6th Cir. 2017)).

Here too, a nondiscretionary determination underlies the Agency's decision to revoke Zamana's petition. In this case, the letter explaining the revocation is based on suspicions about the legitimacy of NTC as Zamana's true employer. The letter references throughout it information that Plaintiffs supplied to the Department of Labor to receive their labor certification. (Doc. 1 at 19, 21, 23, 24). The USCIS officer outright questioned the conclusions of the DOL Certifying Officer. *Id.* at 24 ("As such, it appears that the DOL may not have been aware of material facts at the time it certified the labor certification."). Plaintiffs supplied that information to DOL to satisfy the requirements of 8 U.S.C. § 1182(a)(5)(A)(i) which, **just like the underlying statute in Jomaa**, is nondiscretionary. That section provides, "aliens who are inadmissible under the following paragraphs *are ineligible* to receive visas and ineligible to be admitted to the United States," and further specifies that:

> [a]ny alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor *is inadmissible*, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (I) there are not sufficient workers who are able, willing, qualified … and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1182(a)(5)(A)(i) (emphasis supplied). This language permits no discretion. In short, immigrants *shall not* receive an employment-based visa without a labor certificate

11

from DOL. To secure a labor certificate, Plaintiffs submitted volumes of evidence and certified, at risk of regulatory penalties, that they did not make any material misrepresentations. *see* 20 C.F.R. § 656.24(f). That evidence included fundamental information such as the employer's true address, proof that NTC had attempted to recruit U.S. workers, and proof that NTC would be able to pay Zamana for his work on the first day he set foot in the United States. *See id.* at § 656.10(c)(1), (4); § 656.17(e); § 656.20(a). The true address at which Plaintiff would work was especially key information because the statute charges DOL with determining whether there are "sufficient workers" available "at the place where the alien is to perform" his work. 8 U.S.C. § 1182(5)(A)(i). Thus, DOL necessarily concluded that Zamana would work for NTC in Cincinnati. In sum, determinations about NTC's address, the location of Zamana's job, the legitimacy of NTC's job offer, and NTC's ability to legally pay Zamana were not only *nondiscretionary*; they were also **not determinations USCIS was authorized to make.**

USCIS has made it clear that its decision to revoke the visa petition was based on doubt that NTC was Zamana's "actual intended employer" (Doc. 1 at 18), that NTC could legally pay Zamana for work in Ohio (*id.* at 23), and that Zamana would actually work for NTC in Cincinnati (*id.* at 24). USCIS had no discretion to make those determinations both because they are inherently nondiscretionary and because the statute commits them to an entirely separate department in the executive branch. 8 U.S.C. § 1182(5)(A)(i). Where a nondiscretionary decision "underlie[s] determinations that are ultimately discretionary," the district court retains subject-matter jurisdiction. *Jomaa*,

12

940 F.3d at 297. Accordingly, this Court retains jurisdiction to resolve Plaintiff's Administrative Procedure Act ("APA") claim.

Plaintiffs have also raised arguments in their briefing that go to the merits of their APA claim. Those arguments are embarrassing for USCIS but ultimately premature. The Court will not decide that the Agency acted arbitrarily and capriciously without full briefing on the matter.

## IV. CONCLUSION

Based upon the foregoing, the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 14) is **DENIED.**

**IT IS SO ORDERED.**

Date: 3/30/2022

s/Timothy S. Black
Timothy S. Black
United States District Judge